Eastern District of Kentucky
F I L E D
JUL 2 8 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-314-GWU

CHRISTINA CHADWICK,                 PLAINTIFF,

VS:             MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT,

## INTRODUCTION

Christina Chadwick brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

     1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

     2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

     3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

     4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

     5.    Does the claimant have any impairment or combination of

1

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Chadwick, a 32 year-old former cashier and waitress[1] with a high school education, suffered from impairments related to an affective disorder and a personality disorder. (Tr. 20). Despite the plaintiff's impairments, the ALJ determined she retained the residual functional capacity to perform a restricted range of work at all exertional levels. (Tr. 24). Since the claimant could return to all of her past work, she could not be considered totally disabled. (Tr. 24).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Chadwick could return to her past relevant work, the

---

[1] The record reveals that the plaintiff worked as a telemarketer for no more than one week. (Tr. 80, 240). Thus, this position would not appear to constitute past relevant work.

5

ALJ relied heavily upon the testimony of Vocational Expert James Miller. The hypothetical question presented to Miller included such non-exertional limitations as "limited but satisfactory" ability to (1) deal with the public; (2) maintain attention and concentration; (3) work closely with others without undue distraction; (4) complete a normal workweek; and (5) respond appropriately to changes in the work setting. (Tr. 256-257). In response, the witness testified that Chadwick's past relevant work could still be performed. (Tr. 257). Therefore, assuming that the vocational factors considered by Miller fairly depicted the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Chadwick's mental condition. Dr. Kevin Eggerman examined the plaintiff and noted problems with a mood disorder and borderline personality disorder. (Tr. 122). Dr. Eggerman rated the claimant's Global Assessment of Functioning (GAF) at 65. (Tr. 122). Such a GAF indicates the existence of only "mild" psychological symptoms according to the American Psychiatric Association: Diagnostic and Statistical Manual for Mental Disorders, (4th Ed.-Revised 1994). The examiner opined that Chadwick would have a "fair" ability to understand and remember instructions, relate to co-workers and supervisors, persist on task and tolerate work-related stress in an eight-hour day. These somewhat differently worded but modest restrictions appear essentially compatible with those included in the hypothetical question.[2] The mental factors found by the ALJ were also essentially consistent with the mental limitations identified by Psychologists Jay Athy (Tr. 143-144) and Ann Demaree (Tr. 148-149), the non-examining medical reviewers. The

---

[2]The claimant has not asserted that there was any contradiction between Dr. Eggerman's mental restrictions and those presented in the hypothetical question.

6

plaintiff's treating source at the Cumberland River Comprehensive Care Center did not report the existence of more severe specific mental limitations than those found by the ALJ. (Tr. 124-140, 215-229). Therefore, the ALJ dealt properly with the evidence of record relating to the claimant's mental condition.

Chadwick argues that the ALJ erred in finding that she did not suffer from a "severe" physical impairment. Dr. Hughes Helm, an examining consultant, noted dysfunction with the plaintiff's right ankle which the physician stated would impair her ability to perform such activities as repetitive sitting, standing, moving about, lifting, carrying, and handling objects. (Tr. 115). These would appear to be significant restrictions. However, an x-ray of the claimant's right ankle revealed a plate with multiple screws in place but the fibula was in the correct anatomic position. (Tr. 115). Dr. Helms' physical examination revealed a normal station and gait. (Tr. 114). Dr. David Swan, a non-examining medical reviewer, opined that Dr. Helms' opinion was entitled to little weight because he had relied primarily upon subjective symptoms. (Tr. 142). Dr. Swan noted that the plaintiff had indicated to Dr. Eggerman that she walked one-mile to his examination. (Tr. 142). Thus, Dr. Swan thought that the claimant's physical problems were "less than severe." (Tr. 142). Dr. Calixto Hernandez, another medical reviewer, agreed with Dr. Swan. (Tr. 141). An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for his differing opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Dr. Swan met this standard in the current action. Therefore, the ALJ could properly rely upon his opinion to find that Chadwick did not suffer from a "severe" physical impairment.

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant

7

the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 28 day of July, 2005.

G. WIX UNTHANK
SENIOR JUDGE